RUSSELL, Judge.
This is an action for declaratory judgment declaring the right of the Morgan County Department of Human Resources (DHR) to privately interview children at school who are alleged victims of child abuse.
Following an ore tenus hearing, the trial court entered an order, declaring the poli- *1332 des of the Decatur City Board of Education, the Hartselle City Board of Education, and the Morgan County Board of Education (Boards) denying private, on-campus interviews to DHR in every instance as transcending the limits of “Chapter 8, Title 16, Code of Alabama 1975,” and as arbitrary and, therefore, unlawful. Additionally, the Boards were ordered to “adopt policies on this subject not inconsistent with this opinion.” The Boards appeal. We affirm.
The dispositive issue is whether the trial court committed reversible error by ruling that the Boards’ blanket policies, denying private interviews to DHR with suspected child abuse victims, transcend the statutory authority granted to the Boards.
Our standard of review is:
“Where the evidence is heard by the trial court ore tenus, it is well established that the trial court’s findings will not be disturbed on appeal unless plainly and palpably wrong. Skipworth v. Skipworth, 360 So.2d 975 (Ala.1978); King v. King, 269 Ala. 468, 114 So.2d 145 (1959). Accordingly, if there is any credible evidence to sustain the findings of the trial court, they must be upheld.”
Hargett v. Franklin County Board of Education, 374 So.2d 1352, 1354 (Ala.1979).
The pertinent sections of the Code of Alabama of 1975 and cases follow:
Sections 26-14-1 through -13, Ala.Code 1975 (1986 Repl.Yol.), concern child abuse and neglect.
Section 26-14-2 (emphasis supplied) reads as follows:
“In order to protect children whose health and welfare may be adversely affected through abuse and neglect, the legislature hereby provides for the reporting of such cases to the appropriate authorities. It is the intent of the legislature that, as a result of such efforts, and through the cooperation of state, county, local agencies and divisions of government, protective services shall be made available in an effort to prevent further abuses and neglect, to safeguard and enforce the general welfare of such children.... ”
Section 26-14-3 (emphasis supplied) states:
“(a) All ... school teachers and officials ... or any other person called upon to render aid or medical assistance to any child, when such child is known or suspected to be a victim of child abuse or neglect, shall be required to report ... immediately, followed by a written report, to a duly constituted authority.
“(b) When a report is made to a law enforcement official, such official subsequently shall inform the department of human resources of the report so that the department can carry out its responsibility to provide protective services to the respective child or children.”
Section 26-14-6 (emphasis supplied) provides the following:
“A police officer, a law enforcement official or a designated employee of the state or county department of human resources may take a child into protective custody ... without the consent of the parent or guardian.... However, such official shall immediately notify the court having jurisdiction over juveniles of such actions in taking the child into protective custody; provided, that such custody shall not exceed 72 hours and that a court of competent jurisdiction and the department of human resources shall be notified immediately in order that child-proteetive proceedings may be initiated. ...”
Section 26-14-7 (emphasis supplied) provides:
“(a) The state or county department of human resources shall make a thorough investigation promptly upon either the oral or written report. The primary purpose of such an investigation shall be the protection of the child..
[[Image here]]
“(c) The investigation may include a visit to the child’s home, an interview with the subject child, and may include a physical, psychological or psychiatric examination of any child or children in that home. If the admission to the home, school or any other place that the child *1333 may be, or permission of the parent or other persons responsible for the child or children, for the physical, psychological or psychiatric examination, cannot be obtained, then a court of competent jurisdiction, upon cause shown, shall order the parents or persons responsible and in charge of any place where the child may be to allow the interview, examinations and investigation. If, before the examination is complete, the opinion of the investigators is that immediate removal is necessary to protect a child or children from further abuse or neglect, a court of competent jurisdiction, on petition by the investigators and with good cause being shown, shall issue an order for temporary removal and custody.”
Section 26-14-8(b) (emphasis supplied) provides:
“The state department of human resources shall establish and enforce reasonable rules and regulations governing the custody, use and preservation of the reports and records of child abuse and neglect. The use of such reports and records shall be limited to the purposes for which they are furnished and by the provisions of law under which they may be furnished. The reports and records of child abuse and neglect shall be confidential. ...”
Section 26-14-12 (emphasis supplied) allows that:
“The state department of human resources may establish such regulations as may be necessary to implement this chapter....”
Sections 16-8-8 and 16-11-9, Ala.Code 1975 (1987 Repl.Vol.) (emphasis supplied), concern the power of school boards to control activities at school.
Section 16-8-8:
“The general administration and supervision of the public schools of the educational interests of each county, with the exception of cities having a city board of education, shall be vested in the county board of education; provided, that such general administration and supervision of any city having a city board of education may be consolidated with the administration and control of educational matters affecting the county and vested in the county board of education.”
Section 16-11-9:
“The city board of education is hereby vested with all the powers necessary or proper for the administration and management of the free public schools within such city and adjacent territory to the city which has been annexed as a part of the school district which includes a city having a city board of education.”
In Hargett, 374 So.2d 1352, 1354 (citations omitted), the court stated:
“It is established that the administration of school systems is the responsibility of the county boards of education. Code 1975, §§ 16-8-8 & -9. Accordingly, the courts will not seek to control the exercise of the broad discretion given by the legislature to the county boards of education. All legal intendments are indulged in favor of the orders of such boards, and the orders are due to be upheld unless the invalidity is clearly shown by those challenging the order.”
In State Department of Pensions & Security v. Whitney, 359 So.2d 810, 812 (Ala.Civ.App.1978), this court stated:
“[A] determination by an administrative agency is not ‘arbitrary’ or ‘unreasonable’ where there is a reasonable justification for its decision or where its determination is founded upon adequate principles or fixed standards.”
“The cardinal rule for construction of a statute is to ascertain the legislative intent, which must be determined by examining the statute as a whole in light of its general purpose.” Gulf Coast Media, Inc. v. Mobile Press Register, Inc., 470 So.2d 1211, 1213 (Ala.1985).
“There is a rule of statutory construction that specific provisions relating to specific subjects are understood as exceptions to general provisions relating to general subjects.” Murphy v. City of Mobile, 504 So.2d 243, 244 (Ala.1987) (citations omitted).
The pertinent facts reveal that in 1986 the Boards began denying DHR the right *1334 to interview reported victims of abuse in private at schools, based on policies developed by the various Boards. DHR was required to go to court to seek ex parte orders, as prescribed in Ala.Code 1975, § 26-14-7, in order to interview each child without the presence of a school official. As of the time of the trial court’s hearing in April 1988, DHR representatives had been to court 170 times to obtain such an order. There have been no denials of the requests for such orders.
Representatives of DHR testified that private interviews with an alleged victim of child abuse were needed to establish rapport with the child and to avoid embarrassment for the child. They stressed the need for special training for those present at interviews to learn to relate at the child’s level, to learn to use specific interview techniques to enhance ability to elicit information, and to learn not to react to the child’s statement about abuse.
The superintendents of the Boards testified as to the reasons for enforcing the disputed policies. They stressed the need to be present at interviews to protect the child’s welfare, to limit the potential liability of the Boards, and to fulfill an obligation to the parents and the children.
The Boards contend that the trial court erred in declaring arbitrary and, therefore, unlawful school board policies which require the presence of school officials at interviews of students who are alleged child abuse victims. The Boards deny that their actions can be termed arbitrary.
In considering the claims of the Boards, we first examine the statute to determine the intent of the legislature regarding the reporting of child abuse and then the statute giving general administrative powers in the schools to boards of education. The legislative intent must be determined by “examining the statute as a whole in light of its general purpose.” Gulf Coast Media, 470 So.2d at 1213. In addition, we must determine if the trial court’s findings are sustained by any credible evidence.
A careful reading of the various sections of Title 26, Chapter 14, indicates the intent of the legislature to protect children and to safeguard and enforce their general welfare through the reporting of abuse and neglect and through the cooperation of state, county, and local agencies and divisions of government. Ala.Code 1975, § 26-14-2. School teachers and officials are among those required to report any known or suspected victim of child abuse or neglect to a duly constituted authority, which report is then presented to DHR so that DHR may carry out its responsibility to provide protective services to the child. Ala.Code 1975, § 26-14-3. A designated employee of DHR may take a child into protective custody for 72 hours without parental consent with only notice to the court if there appears to be imminent danger to that child’s life or health. Ala.Code 1975, § 26-14-6. DHR has the responsibility to make a thorough investigation of reports of abuse, the primary purpose being protection of the child. If admission to home, school, or any other place is denied, DHR may go to court for an order to allow the interview, examinations, and investigation, and if removal is deemed necessary to protect the child, DHR may petition the court for an order for temporary removal and custody. Ala.Code 1975, § 26-14-7. Reports and records of child abuse and neglect are confidential and may be used for purposes listed, Ala.Code 1975, § 26-14-8, and those who participate in the making of a report or removal of a child are immune from any civil or criminal liability, Ala.Code 1975, § 26-14-9. In addition, DHR is empowered to establish regulations as necessary to implement this statute. Ala.Code 1975, § 26-14-12.
As to the child abuse statute, we find that it clearly indicates the legislative intent to protect children from child abuse and to give DHR the power to act as necessary to carry out its responsibility within the parameters established. Protection of children is in the child’s best interest and is an overriding concern of the public.
The Boards claim that §§ 16-8-8 and 16-11-9, cited above, give them the power to control all activities occurring at schools and involving school children. We find this to be a general statute and that *1335 the specific statutory provisions regarding child abuse are exceptions to the general statute and, therefore, are controlling here. Murphy, 504 So.2d at 244.
Furthermore, we find that the statute directs DHR to conduct a thorough investigation, and implicit with the mandate is the authority of DHR to determine what is thorough. Expert testimony has shown the importance of private interviews by those trained in special techniques, and, in fact, private interviews have been granted by court order in 170 cases filed to date of trial. Considering the reasons given by experts in support of private interviews and a likely need for prompt action to protect a child, we find that the Boards’ continued requirement of the presence of a representative in all instances impedes the intent of the child abuse statute and in emergency instances may render it inoperable and ineffective.
In view of the above, we agree with the trial court and find that there is no reasonable justification for, or right to, the Boards’ policy requiring that an official school representative be present at all interviews, and, therefore, find that the trial court’s findings were supported by the evidence.
The Boards next contend that the trial court’s order is ambiguous and vague and that the court exceeded its authority and intruded on the Boards’ authority and power to establish policy. We find that the trial court’s order is clear and appropriate in that, after invalidating the unlawful policy, the court left the making of the new policy to the Boards.
Based on the above, we find that the trial court’s order is due to be affirmed.
AFFIRMED.
INGRAM, P.J., and ROBERTSON, J., concur.